Good afternoon. Good afternoon. I'm Glenn Osterger for the appellant Brad Park Packer. I'm a firm of Osterger, Chung, Flaherty & Breitman, and with me today are my co-counsel Paul Wexler and Josh Breitman. In Donahue v. Bulldog Investors General Partnership, the unanimous panel of this court reaffirmed the long-standing doctrine that short-swing trading in an issue of stock by a greater than 10% beneficial owner in violation of Section 16B causes injury to the issuer sufficient for constitutional standing. Nothing subsequent to Bulldog, including TransUnion v. Ramirez, has changed the law. Five Southern District Court decisions agree with this proposition. So does the Securities and Exchange Commission. First, Bulldog identified a close common law analog at the core of Section 16B's cause of action, a breach of fiduciary duty claim. The breach of that duty by itself inflicts redressable injury upon issuers. And second, Bulldog properly hooded to Congress's decision to create a cause of action for issuers to claw back short-swing profits based on that common law analog. Nothing more is required for standing. So let me just focus on the second part of that. And maybe I'm misreading, or maybe I've misread it. The second part of that is that it places some limits, that is, really a constitutional limit with respect to Article III standing on what Congress, what injuries Congress can determine exist. Is that correct? That's correct, Your Honor. So it's not without limit? That is, congressional power to define injuries is not without limit? No, it is not. But if the statute is based in the common law and there's an appropriate analog to a common law... Can you speak up a little bit, actually? If the claim is based in the common law and there's an applicable common law analog, then legislate and create standing for injuries where there is, as I've said, a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts. And the court in TransUnion cites Spokio v. Robbins. And the Supreme Court in TransUnion noted that the common law underpinnings need not be a perfect fit with new legislation. While the injury finds its roots in the common law, it need not be an exact duplicate. So that is the fundamental question. Is there a circumstance under which a violation of 16b does not entail a form of self-dealing? I mean, set aside insider trading. Is there a circumstance under which a violation of section 16b does not entail some form of self-dealing by the beneficial owner? I think that in Grants v. Clayton, Judge Lerner had explained that the statute makes... I don't know him. Okay. I think you may. But he explained that the statute makes the fiduciary a constructive trustee for any profits he may make and further explained that a common law in accounting, surcharging a trustee for breach of his fiduciary duty was a readily valid remedy. And I'd cite to Morrissey v. Curran, 650 F. 2nd, 1267 and 1282, addressing the common law doctrine. But maybe... Well, go ahead. I was going to say that the insider need not be privy to information that... or have any inside information. It's a strict liability. It's a liability statute. It's a blunt instrument. The statute's a blunt instrument designed to address the evils of speculative trading by insiders in the marketplace. I'm sorry. Go ahead, just a minute. So is the answer to Judge Boyer's careful question no? The answer is, if I understood the question, that any short-swing trading is within the scope of the statute if one has the status as an insider under the statutory definitions. If he's a fiduciary? All insiders are deemed to be fiduciaries under the statute. So that would be offices, directors, and greater than 10% beneficial owners of any class of securities of the issuer. So if you have a 10% owner who does the trading, you believe there is standing? Absolutely. Now, in prior appeal, we set it back for a determination, a factual determination, whether there was a 10% ownership here. You recall that? I do recall it very well, Your Honor. And there has not yet been a finding. Is that correct? There's been no finding. We've been delayed in motion practice for a couple of years. Your Honor, is it your view that if we were to agree with you and find standing, that whether there is a 10% ownership in fact would be an issue on the merits? That would be an issue on the merits, presenting fact issues for determination by a jury. Now, procedurally, we're at the summary judgment stage. Is that right? That's correct. Mr. Ostrich, hold on one second. I'll ask the court of deputy to. I'll give you some of your time. Okay, please proceed. Is there a question that you, Your Honor, that you'd like me to address? I think Judge Newman was asking about procedurally, but you correct me if I'm wrong, Judge Newman. There's still something to be settled with respect to whether there was a 10% beneficial ownership. That's correct. Now, since we're at the summary judgment stage, has that factual issue been put in dispute? It's in dispute and the subject of a pending motion, which was not addressed by the district court. And is it fair to say that this is not a case of uncontested facts to prove that they are 10% owners? There are contested factual issues below. So if you're right that just being a fiduciary and you're further right, if you're further right that owning 10% renders you a fiduciary, your view is that's enough for standing and the case must be remanded for trial, right? That's correct, Your Honor. Now, all right. I'll move on to a point of your adversaries who say in their papers that the owners of 10% owned a junior class of equities with nominal voting power and did not have confidential information. They say that in their group. Does that allegation matter? We think not. If the defendants are greater than 10% beneficial owners of any class, then they're fiduciaries. And if they engage in short-swing trades, that's a breach of their fiduciary duties and it's unactionable. And they act as trustees for the issuer and the short-swing profits are subject to discouragement. I would say that the fact that they may hold a lower voting percentage by holding class A stock as opposed to class B stock in this case does not address the issues of the statute. The statute is addressed to any class of securities and it's concerned about information asymmetries in the marketplace. And the statute is premised on the basis that in order to curb short-swing trading, you have to have a blunt and strict liability determination of liability when you have a greater than 10% holder. And the fact that there's a junior class of stock with lesser voting power doesn't change the operation of the statute. Let me just understand, just as a slight follow-up, with respect to the fiduciary, the necessarily fiduciary nature of this relationship and what, as I understand it, your argument is relying on the breach of the fiduciary duty of loyalty. If a beneficial owner of 10%, let's just say that that's off the table for a moment, lets the board of the issuer know, lets the management of the issuer know within the six-month period, this is what we're going to do and the board and management permit it. Is that a violation of 16B? Yes, it is, Your Honor. There really is totally strict liability. It's strict liability. And we've got case law on that. Yes, we do, Your Honor. Now, just to step back a minute, in TransUnion, the court said, at least in that case, a statutory violation alone is not enough for standing. Did they not? They did. They did. They had to find something else. In that case, it was the distribution of information. The publication. Or publication. I take it you're generalizing that something else can be many things, of which one of them is breach of the fiduciary duty. That's correct. That's correct. Now, does that mean that in the 16B context, if a fiduciary engages in short swing trading, the statutory violation alone is enough because that person is a fiduciary? That's correct, because the fiduciary has an obligation not to engage in short swing trades. And by doing so, they breach their fiduciary obligations. And as Judge Lerner had explained, the statute makes the fiduciary a constructive trustee for any profits he may make. And that has to be disgorged to the issuer. And in common law, there was well-established precedent that, in common law, an accounting surcharging the trustee for the breach of that fiduciary duty was a readily available remedy. And so that is the essence of this. So in TransUnion, we were dealing with the tort of defamation. The common law analog was defamation. And the court found that the statute in that case didn't require publication. But nevertheless, in looking at the claims, said there has to be publication in order for there to be the requisite common law analog to support Article III jurisdiction. And so the court in TransUnion looked at a first group where a credit agency had disseminated misinformation about members of a first group. There was publication, and the court found that that provided an appropriate or a necessary common law analog for Article III standing. There was a second group where confidential information of records of the group members was maintained by the credit agency internally and was not disseminated. And the court found in that case, they didn't meet the necessary publication to support the common law analog. Under Section 16B, it is the trading itself, the short swing trading itself, which establishes the breach of fiduciary duty at common law and the appropriateness for disgorgement of short swing profits to the issuer. That necessarily, based on many of the answers you've provided, means that in every 16B case, the shareholder or the issuer, depending on the case, will have a standing just by virtue of having alleged a violation of 16B. That's correct, Your Honor. Okay. Well, there's one qualification. I take it you would agree that yes, provided there's a violation, and there's a violation only when a fiduciary engages in short swing trading. That's correct, Your Honor. So in the present case, if on remand, defendants are successful in establishing that they were not beneficial owners at the time of the alleged trading, they were not greater than 10% beneficial owners, then there's no violation of the statute and no entitlement to disgorgement. So we've kept you a little bit past your time, and we'll hear from your friend on the other side, Mr. Fleming. Thank you, Your Honor. Thank you. And you reserved some time for rebuttal. One minute. Thank you. Thank you, Your Honor. I think the Court put it perceptibly when noted that the thesis here is that every violation of Section 16 gives rise to standing, and I think the qualification that there has to be a fiduciary relationship is really circular. Every Section 16 player is a fiduciary. So the thesis is that every 16 violation gives rise to standing. And what the district court here did is it looked beyond the labels and looked to the reality here, and the fact is that raging capital controls 1% of the voting power. It's not a fiduciary in any sense of the word. It's covered by the statute because the statute applies to a class of equity security, so they have rights in a junior class that basically has nominal voting power. So as a matter of what's before us is Article III jurisdiction. Yes, Your Honor. You're, in one sense, going past that. I think what was before us, the question presented, was whether an allegation of violation of 16B, where the allegation includes that the beneficial owner owns 10%. Right, Your Honor. But to assume all that, that's where I think we are. Yes, Your Honor. The allegation here is against someone who owns 10% of a junior voting class. So in fact, similarly, this was on summary judgment, so we had the evidence that the court knew what the actual voting power was. So you had an equity shareholder who had no ability to influence or control because at most they had 1% of the vote. So this is a shareholder who had— 1% of, excuse me, 1% of what? 1% of the total voting power of the company, Your Honor. So the Class B shares had 90% of the vote. The Class A shares had 10%. Raging Capital had 10% of the 10%, so it had 1%. So this was a controlled company where the Class B shares were in control. And what the statute, what the analysis under TransUnion looks to is, is there an analog, a common law for such a claim? It also looks to whether there's actual harm. And here— Well, if these people own 10%, then they are fiduciaries. Is that correct? I respectfully disagree, Your Honor. They are not fiduciaries in any sense under any legal analysis. No Delaware court, no court has ever held that a shareholder in this position would be a fiduciary. And if I could take a moment to explain why, Your Honor. Corporate fiduciaries have control of assets that belong to others. So officers and directors manage the entity. They are not the owners. Control shareholders may also manage the entity for the benefit of minority owners. My clients, the Raging Capital parties, had no ability to manage the entity. They had no ability to do anything. They had no access and never used confidential information. So you're competing with learned in hand here, who seems to have suggested—you know, you might win. You might win. Who seems to have suggested in Gratz that, in fact, it is a fiduciary duty if—or fiduciary relationship if it's a beneficial owner under 16B. Your Honor, I think what TransUnion calls for is an analysis of whether or not there actually is a fiduciary relationship, particularly at the summary judgment stage. So at this point, you look to see, is it analogous? Is this a 10 percent shareholder who actually had representatives on the board who tried to influence corporate affairs? That's not the case. We never— Your brief, it seems to me, your argument, interesting as it is, is not quite what you told us in the statement of issue. You framed your issue, too, in terms of defendants who beneficially owned 10 percent of what you called a junior class, and your adversary concedes that, with nominal voting power and did not have confidential information. That framing of the issue doesn't say anything about 1 percent ownership. Well, Your Honor, 10 percent of the junior class is the 1 percent. I think that was undisputed on the record below. So we were talking about a class, not the total voting power of the corporation. So I think that was well framed when we put the questions to the Court. Why aren't they a fiduciary even if their 10 percent is only 1 percent of the total stock? Because, Your Honor, fiduciaries in the corporate setting actually manage the company for the benefit of others. That's what directors and officers do, and a controlled shareholder or a 10 percent shareholder who actually was involved in the company might do that. But we, Raging, did no such thing. Raging was a stranger to the corporation, traded on its own information and analysis, and had nothing to do with management. So, therefore, it never had any fiduciary relationship, which also ties in, Your Honor, to the second test of the transunion, which is was there actual harm? I mean, there's been no harm here that anybody's been able to identify other than the statutory breach, which is the same as the fiduciary breach. Well, the theory of Bulldog is that there is harm presumed when a fiduciary breach is a fiduciary duty. Correct, Your Honor. You don't look behind that. Isn't that what that case said? That is what the case says, Your Honor. But I believe transunion has made it clear, and I think this court and Hardy also followed transunion when it made clear that labels and designations by statute don't suffice. The court has to look to an actual injury in fact. And the Supreme Court decision in Thole v. United States is very relevant here, Your Honor, because there you had actual fiduciaries. Well, now I'm not clear which is your real argument. I thought you were starting off to say their 10 percent ownership doesn't render them a fiduciary because the 10 percent reduces to 1 percent of the corporate stock. Now you seem to be saying never mind those percentages. There has to be proof of actual injury. Now, I suppose you're entitled to make both arguments, but I'm curious to know exactly what your argument is. Well, Your Honor, my argument is that under transunion there's two things that must be established. First, you have to have a claim that is analogous to one that was established at common law or recognized in the U.S. courts. All right, and let's take that one. They say breach of a fiduciary duty is the analog to common law. Do you dispute that? I do dispute that, Your Honor, and I dispute that because it's just a label in this case. The raging parties were drawn the problem. Of course it's a label. Of course it's a label. Fiduciary duty is a label. But if the label has true meaning, then it's a very important label. You can't get rid of it by saying it's only a label. That's like saying, well, the class in transunion, when they talked about distribution or dissemination, that was just a label. Of course anything is a label. The question is what is being labeled? Well, Your Honor, when I used that term, I meant there's no substance to it. So these are not fiduciaries that have ever been recognized at law anywhere in any court in the United States. And you're saying they're not because their 10% reduces to 1%. They are clearly not fiduciaries under any legal standard except solely the Section 16 fiction by virtue of the fact that they only have 1% and they are not involved in corporate management. But that issue has not yet been resolved. Well, Your Honor, that's the issue that has been— That's in dispute. Well, no, Your Honor. What's not in dispute is that at most they could be 1%. This is on summary judgment, so we know that they own Class A common stock. That's the allegation. That's, again, some of that's in dispute. But that's at most that they own. So they had to show— Let me ask you the following then. Let's say that we disagree with you on that. And that, in fact, there is no dispute that your client is a 10% owner, therefore a beneficial owner for purposes of Rule 16b. Then do you have another argument? In other words, that they're still not fiduciaries or that the harm is not one that's been recognized or some analogous harm that's been recognized? Yes, it's not an analogous one to common law. And I have the further argument, which I think is crystallized in TransUnion, is that there is actually no harm here. This is no different from the plaintiffs in TransUnion who established at trial a violation of the statute were found to have no standing. So even if they find a violation of the statute, there still is a requirement for actual harm. And there isn't any here. And I would ask the Supreme Court decision in Thole v. United States, which dealt with an ERISA trustee. In that case, the court found that the claim that the trustee reached a fiduciary duty and reached a contract and that the plaintiffs had statutory rights, none of that was sufficient to establish standing because the plaintiffs in that case had no—they had a defined benefit plan. The economics didn't make any difference to them one way or the other. And the same is true here. Let's come back to their argument that breach of a fiduciary duty satisfies standing and that no actual harm beyond breach of a fiduciary duty is necessary. Just accept that for a moment. I appreciate you think more is needed, but let's say we were to disagree with you that anything more than breach of a fiduciary duty is necessary. Okay? Just for the moment. Now, when they say we own 10 percent, what do you understand their 10 percent is of what? Their claim is under the statute, and the statute applies to a class. So the allegation is that the raging capital parties beneficially owned 10 percent of the Class A common stock. Notice of the Class A common stock. Which was a non— Does that render them a fiduciary? Absolutely not, Your Honor. The Class A common shareholders had absolutely no control over this entity. They were minor players. They were basically—essentially passive investors with nominal voting rights, and under no corporate governance analysis would anyone like that ever be cast as a fiduciary. Did the district court deny standing on this theory that you're now articulating? The district court definitely made clear that its standing analysis was based on the facts of this case, which included and which was prominently presented as a case involving a beneficial owner of 1 percent of the voting power of the stock with absolutely no ability to control or influence the company, absolutely no access to corporate inside information, the supposed evil of the statute, and whose trading was based on its own market analysis caused no harm or loss to Flowers. And in fact, Your Honor, these trades weren't even published, so we never made filings under Section 16 because we thought we were exempt. And the only way they found out about them was the plaintiff looked at other filings under Section 13 and was able to conjure up that there had been sales in this period. Does Section 16b, when it defines a violator as someone who owns 10 percent, make the distinction as between classes of stock? No, Your Honor. It applies to… Then why could we? Because I believe TransUnion requires that, Your Honor. I believe that TransUnion requires the court to look past… Oh, TransUnion is a credit agency that's distributing false information. That doesn't really tell you which 10 percent owner of stock is necessary for a 16b violation. I mean, the cases are just factually totally different. I agree the cases are factually different, Your Honor, but I believe the principles articulated in TransUnion where the statute gave a cause of action and the jury actually found that all of the plaintiffs had statutory claims and the Supreme Court divided that class into two and found some had no standing, and that's because it looked beyond the statute and determined that Congress did not have the power to simply give people standing through statutes. That was the essence of the Supreme Court decision. That's exactly what they did. But since this statute renders a 10 percent holder of stock without distinction as to class of stock, renders that person a fiduciary, why isn't that enough for standing? Because, Your Honor, that would essentially eliminate all of TransUnion, Your Honor. It would eliminate all of this court's decision in Hardy and Laufer and also in Maddox because anybody could simply… No, it wouldn't eliminate TransUnion. TransUnion has nothing to do with breach of a fiduciary duty. It's talking about actual injury, dissemination of harmful information. It's a very different case. Well, Your Honor, what would happen is the Congress could simply say these people are fiduciaries as well. The fiduciary concept here is divorced from any real fiduciary responsibility, from ever managing and holding assets. The question I'll go back to is from 1951 onward at least, rats all the way up to at least bulldog, we have described the injury that is the result of a Rule 16b violation. You're at the Rule 16b violation. Many of your arguments are directed at that. I understand it. But assume a 16b violation is the result of that injury. The injury is a breach of a fiduciary duty and a beneficial owner who violates 16b is deemed by our precedent to be a fiduciary as directors and officers were anyway. That's a quote. So in terms of the underlying – understanding the underlying harm that's wrought by a violation of Rule 16b, that appears to me to be our description and our precedent through bulldog. Right? I agree with that, Your Honor. You agree with all that? Yes, absolutely. And what you're saying is that transunion transformed that or washed all that away as a description of the underlying harm. But transunion, as I think Judge Newman has – Judge Newman's questions are geared toward, has nothing to do with 16b, nothing to do with the type of harm that I think is before us and that's been described by our precedent. Is there some other Supreme Court case or Second Circuit precedent? I know you cited Maddox and so on. I'd be glad to offer them, Your Honor. First of all, the Maddox decision is certainly directly on point and makes clear that the statutory violation alone is not sufficient. But as I understand it, the problem in Maddox was that the duty was misdirected. So it was a duty to the plan and the people suing didn't necessarily have a fiduciary duty. Your Honor, I believe you're describing Thole. Maddox is the Second Circuit decision where the court reversed – Is that the ERISA case in Maddox? No, Thole is the ERISA case. Maddox is the case involving the New York Mortgage Recordation Act where the plaintiffs alleged that their mortgage hadn't been recorded in 30 days. And the circuit – this circuit reversed its earlier decision and found no standing in it, said the violation of the statute alone wasn't enough and that there had to be actual harm, which is consistent with this court's rulings in Hardy and Laufer where the plaintiffs alleged violations of the ADA. And the court said labels alone are not sufficient. Congress may label this discrimination. The question is, has there been actual injury? And that's why I get to – even if you find a fiduciary relationship, you get to, is there actual injury? And the injury here is, is the violation, which is completely circular. Flowers didn't know anything about these trades. They weren't harmed by this. They have no dog in this fight. This is a case that's really a court exercise over whether the exemptions that apply to a registered investment advisor extend to raging and whether those exemptions also extend to the master fund, its customer. So the trades here were done by raging for its customer, the master fund. And it believed it had exemptions, and that's what's before the district court if we go on remand. But what the district court did is it moved standing to the head of the line and addressed that issue because under no scenario was Flowers harmed here by any of these trades. Its information wasn't taken. Its directors, the company, I'm sorry, raging had no influence over management and had no prospect of influence over management. So you had a private party trading on its private information. When you say influence over management, how does that inform as a matter of the restatement, for example, whether a fiduciary duty exists? So does a fiduciary duty exist only when there's significant influence or influence over the person to whom or the entity to whom the duty exists? That's the premise under which a shareholder can become a fiduciary. Of course, directors and officers are fiduciaries. They manage the assets of the shareholders. But the premise of the statute is that a 10% shareholder can be a fiduciary. So we're at standing, and this goes back to my original question. And then unless there are further questions from my colleagues, I'll let you go. We're at the standing stage, and that doesn't take much, I think, to show standing. And then you may have other arguments about whether, in fact, there was a beneficial ownership subject to 16B. But on standing, the question is, on the surface of things as we see them, particularly on appeal, is there enough to show? Is there something that tells us that maybe, maybe, not definitely, there's a beneficial ownership relationship? And second, is there some harm that we can describe as rooted in the common law, analogously or not, that flows from the violation, which I take it, you agree, it's a strict liability thing. I agree with that, Your Honor. And the one qualification I would add to the court's comment on standing is this is on summary judgment. The case has been pending for eight years. So we've had ample discovery. So at this point, it's incumbent upon the plaintiff to actually produce evidence of harm. And that was another factor that the district court relied on heavily, was that there was no evidence of reputational injury, of any form of harm to Flowers whatsoever. It was strictly a hypothetical, theoretical, you breach the duty, that's the harm. It's a circular type of analysis. Did I understand you earlier to say that there was something objectionable for the district court to have reached this question at the outset? No, Your Honor. The court, I misspoke if I insinuate that. The court appropriately addressed standing first. So the court had a complete summary judgment motion. And it asked the parties to separately brief standing because that was a threshold issue. And the court at that point did have the benefit of a record developed over eight years of affidavits and so on. So the court knew in a very real fashion what the facts were. It wasn't a complaint that the court was looking at with discovery to come. This was a case that had been in this court, back down, additional discovery. And the parties were put to their proof as to what the actual harm was. And the district court found them wanting. And for the reasons in the district court opinion, I would ask this court to affirm. Do we have to, if we were to agree with you, determine that Bulldog was abrogated by TransUnion? I think it was, Your Honor. No, that's not my question. I believe you do, Your Honor. So we've got to hold that TransUnion abrogated Bulldog. I agree with that, Your Honor. I think if you say Bulldog is still good law and you're buying Bulldog whole cloth and the TransUnion didn't change this, I believe I lose this case. I think if you take TransUnion, this court's decisions in Hardy, Maddox, and Laufer, I think you'll see that the premises and the logic of Bulldog don't apply. The court has to apply a new analysis that comes through TransUnion and Thole and Spokeo. And under that, the district court found this case was lacking in standing. Thank you very much. Thank you, Your Honor. Ms. Justry. In Golos v. Mendel, the Supreme Court, quoting the statute, very clearly stated that fiduciaries include greater than 10% owners of, quote, any class of any equity security, end quote. That's in section 16B. The district court conflated TransUnion with the fiduciary claims in this case and held that we didn't have standing because we couldn't demonstrate tangible or reputational harm. We would submit that that was an error as a matter of law. A showing of actual harm cannot be squared with the breach of fiduciary duty targeted by the statute and is antithetical to the provision's operation of a flat rule. Mr. Fleming's saying there's no harm because there's no fiduciary relationship here. It turns out with the benefit of all this discovery. Well, the fiduciary relationship flows from the statutory language that if you're a greater than 10% holder- Well, let me ask you this way. If it turns out that they're not a 10% beneficial owner, they're a 1% beneficial owner, then there is no fiduciary duty, at least with respect to 16B. Is that correct? If they're not a 10% beneficial owner of Class A stock, then the statute's not implicated. Okay, I would say that I would like to- Counsel, wait a minute. That Supreme Court case may carry the day for you, but their argument is, as he just made it to us, that they're not a fiduciary because what they own 10% of is a class of stock that only owns 1%, or that if you do the arithmetic, they end up owning 1%. What do you say to that claim, that because of the nature of their Class A stock, their junior class stock, they are not a 10% owner of flowers, they're a 1% owner? Your Honor, the 1% that the appellee's counsel is referring to is voting power. There's no question that the allegation of the complaint is that they have greater than 10% of the beneficial ownership of Class A stock, and what they're seeking to do is to assert that they were able to jettison that beneficial ownership under the governing SEC rules, and that's the question that's before the district court. There's no question that the allegations of the complaint is that they're greater than 10% beneficial owners of Class A stock. All I'm stating is that if they don't have beneficial ownership of Class A stock, then the statute's not implicated. But the 1% only addresses voting power, not beneficial ownership. I think that what is critical here is that the district court- And what you're referring to then is, is it 16- B. A? No, no, no. In terms of beneficial ownership, every person who is directly or indirectly the beneficial owner of more than 10% of any class of any- Right. That's correct. Right? That's correct. So that then refers back to 16-B. That's correct. Okay. Right. I would, in the limited time I have left, I'd like to- You're out of time, but go ahead. I just want- Okay. The SEC in their amicus brief states, the district court's ruling, if affirmed, would eviscerate Section 16-B. Few, if any, plaintiffs would be able to demonstrate standing, contrary to Congress's intent to create a broad cause of action, albeit one with a limited remedy. And that's in the SEC brief at page 9. That's 90 years of jurisprudence in this court. And so I would respectfully submit that this is a strict liability statute. I recognize that these cases do go on a long time, but you mentioned eight years. Is there a story here that we should understand or anything special? No, there's nothing special. After the remand, the case was assigned to Magistrate Judge Lindsey. There was motion practice, and there was no ruling on motions for approximately two years, I believe. And then the case was reassigned to Magistrate Judge Wicks, and then there was additional motion practice on standing. And so there was, after the remand, there was extensive delay. So if you prevail here, why don't you outline for us what you think the trajectory of this lawsuit will be? Well, I'm hopeful I'll still be practicing. But in any event, on remand, Judge Wicks has before him a motion for summary judgment brought by the defendant. We've opposed that. We've asserted there are fact issues for trial. And we trust that the court would rule on that motion, and we would proceed to trial. Thank you very much. When the case was here before, did the defendants argue lack of standing? I don't believe so, Your Honor. Is that the reason? Mr. Fleming may have an answer to that question. Okay. Your Honor, we did not argue lack of standing. I think it was our theory that under – that TransUnion hadn't been decided yet. And at that point, we were looking at the jurisprudence under Spokeo, and we decided not to argue standing to this court because, frankly, I don't think Spokeo changed Donahue. TransUnion came the following year on remand, and that's when we first pressed the standing court. So one reason the litigation has taken so long is that the standing issue wasn't litigated until well into the litigation. Is that fair to say? That is correct. Thank you very much. Very helpful. Thank you, Your Honor. Thank you very much.